# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ANDRE JOHNSON (#375946)**                              **CIVIL ACTION NO.**

**VERSUS**                                               **19-734-SDD-SDJ**

**DERRICK DAVIS**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 20, 2020.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ANDRE JOHNSON (#375946)                                CIVIL ACTION NO.

VERSUS                                                              19-734-SDD-SDJ

DERRICK DAVIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on Plaintiff's Complaint for screening pursuant to 28 U.S.C. § 1915A. Pursuant thereto, this Court is required to screen Plaintiff's Complaint as soon as practicable after docketing, identify cognizable claims, and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

*Pro se* Plaintiff, Andre Johnson ("Plaintiff"), an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Derrick Davis ("Defendant"), a correctional officer at LSP.[1] Defendant is sued in his individual and official capacities.[2] Plaintiff makes allegations of excessive force, infringement on Plaintiff's right to access the courts, deliberate medical indifference, and violations of procedural due process. To the extent Plaintiff attempts to make claims of deliberate indifference to a serious medical need, infringement on his right to access the courts, and due process violations, the undersigned recommends dismissal of such claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A. The undersigned also recommends dismissal of Plaintiff's claims against Defendant in his official capacity for monetary relief, which leaves Plaintiff's claim for monetary relief against Defendant

---

[1] R. Doc. 1, p. 3.
[2] R. Doc. 1, p. 3.

in his individual capacity and claim for declaratory relief against Defendant in his individual and official capacities for excessive force.

## I.    Background

Plaintiff alleges that on October 21, 2018, he was moved to administrative lockdown in "CBB" by a Major Bernard and a Captain Sibley.[3] After arriving in CBB, Plaintiff attempted to explain to Defendant that he had "done nothing wrong."[4] Defendant responded to the effect that he did not care, so Plaintiff told Defendant "he was going to inform Warden Vannoy and the FBI if anything should happen to him,"[5] at which point, Defendant allegedly became irate.[6] Plaintiff alleges that Defendant pulled the chain to Plaintiff's handcuffs to cause Plaintiff pain by making the handcuffs tighter.[7] Thereafter, Plaintiff, Defendant, and Sibley exited CBB, and Defendant proceeded to slam Plaintiff "head first" onto the sidewalk while Plaintiff's hands were cuffed behind his back.[8] Plaintiff alleges that Defendant then placed his knee on Plaintiff's chest, pressing all Defendant's weight into Plaintiff's chest.[9] Plaintiff avers there was no reason for Defendant's use of force, as Plaintiff was compliant.[10]

Once Plaintiff was behind bars, he stated to Defendant that Plaintiff was going to tell Vannoy and the FBI about Defendant's brutality.[11] Plaintiff alleges that Defendant then sprayed Plaintiff with chemical agent "in the eyes when there was no reason to do so."[12] Plaintiff alleges that as a result of the above incidents, he suffered from painful injuries to his head, neck, back,

---

[3] R. Doc. 1, pp. 3-4.
[4] R. Doc. 1, p. 4.
[5] R. Doc. 1, p. 4.
[6] R. Doc. 1, p. 4.
[7] R. Doc. 1, p. 4.
[8] R. Doc. 1, p. 4.
[9] R. Doc. 1, p. 5.
[10] R. Doc. 1, pp. 3-5.
[11] R. Doc. 1, p. 7.
[12] R. Doc. 1, p. 7.

and chest areas as well as eye injuries, including blindness in his left eye and blurry vision in his right eye.  Plaintiff alleges that "security" refused to send Plaintiff to the LSP hospital for eight days "because they were trying to cover up the above injuries."[13]  Plaintiff went on a hunger strike in an attempt to receive medical attention.[14]  An EMT responded to Plaintiff's hunger strike and allegedly referred Plaintiff to the hospital twice, but each referral was denied by security.[15]  Plaintiff alleges the EMT then went to her boss, and Plaintiff was finally treated at the LSP treatment center and thereafter, sent to the St. Francisville Hospital.  Plaintiff also avers that he was wrongfully held in administrative lockdown for 353 days at the time he filed his complaint and has been denied access to the courts.[16]  Plaintiff seeks declaratory and monetary relief.

## II.    Law & Analysis

### A.  Standard of Review

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action against a governmental entity or an officer or employee of a governmental entity if the Court is satisfied that the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.  The statutes impose similar standards for dismissal.[17]  Both statutes are intended to afford the court the ability to separate those claims that may have merit from those that lack a basis in law or in fact.

---

[13] R. Doc. 1, p. 7.
[14] R. Doc. 1, p. 8.
[15] R. Doc. 1, p. 8
[16] R. Doc. 1, p. 10.
[17] § 1915(e) provides a procedural mechanism for dismissal of those lawsuits against a governmental entity or employee or officer of a governmental entity that are frivolous, malicious, or fail to state a claim in proceedings where the plaintiff was granted leave to proceed *in forma pauperis*; § 1915A provides a procedural mechanism for dismissal of lawsuits by prisoners that are frivolous, malicious, or fail to state a claim upon which relief may be granted regardless of the pauper status of the plaintiff.  Plaintiff was granted permission to proceed *in forma pauperis* on November 15, 2019.  (R. Doc. 5).

3

A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[18] A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."[19] The law accords judges not only the authority to dismiss a claim that is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations.[20] Pleaded facts that are merely improbable or strange, however, are not frivolous for purposes of § 1915.[21] A § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[22]

To determine whether the complaint fails to state a claim under § 1915(e)(2)(B)(ii), courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[23] Accordingly, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party.[24] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[25] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26] A § 1915 dismissal may be made at any time, before or after service of process and before or after

---

[18] *Denton v. Hernandez*, 504 U.S. 25, 33-33 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989).
[19] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).
[20] *Denton,* 504 U.S. at 32.
[21] *Id.* at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).
[22] *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).
[23] *Hart v. Harrison*, 343 F.3d 762, 763-64 (5th Cir. 2003).
[24] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[26] *Id.*

4

an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[27]

### B. Access to the Courts

Plaintiff alleges in a conclusory fashion that he has "been denied access to the courts."[28] Inmates have a fundamental constitutional right of access to the courts.[29]  The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."[30]  Further, in order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that he has suffered some cognizable legal prejudice or detriment as a result of the defendant's actions.[31]  In addition, the plaintiff must be able to show that the defendant had an intent to interfere with the plaintiff's right to submit pleadings to the courts or was otherwise deliberately indifferent to the plaintiff's wish to do so.[32] An inmate's right to seek access to the courts is limited to the making of non-frivolous claims involving the assertion of legitimate constitutional rights.[33]  Therefore, because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court,"[34] "the underlying cause

---

[27] *See Green*, 788 F.2d at 1119.
[28] R. Doc. 1, p. 10.
[29] *Lewis v. Casey*, 518 U.S. 343, 351 (1996).
[30] *Lewis,* 518 U.S. at 356.
[31] *Eason v. Thaler,* 73 F.3d 1322, 1328 (5th Cir. 1996).
[32] *See Herrington v. Martin,* 2009 WL 5178340, *2 (W.D. La., Dec. 23, 2009) (recognizing that "[a]n 'access to courts' claim is actionable only if the deprivation stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983'").
[33] *Johnson v. Rodriguez,* 110 F.3d 299, 311 (5th Cir. 1997).
[34] *Christopher v. Harbury,* 536 U.S. 403, 415 (2002),

5

of action, whether anticipated or lost, is an element that must be described in the complaint."[35] "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."[36]

To prevail, the inmate must show the following: (1) a nonfrivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded by acts of the defendant(s), and (2) he has suffered an actual injury as a result.[37] An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the *inability* to meet a filing deadline or to present a claim."[38] The underlying claim must be described well enough to apply the frivolity test and to show that its "arguable nature . . . is more than hope."[39]

Plaintiff has not provided this Court with any description of the underlying action, which was allegedly barred out of court due to Defendants' actions. The underlying cause of action must be described in the complaint so as to provide this Court with the opportunity to determine if the Plaintiff was prevented from bringing a non-frivolous claim involving the assertion of legitimate constitutional rights. Plaintiff has not provided any detail regarding the underlying claim he sought to bring or any details regarding how Defendants interfered with him bringing that claim. Plaintiff's access to the Courts claim appears to rely on the fact that plaintiff had "a hard time getting legal assistance."[40] The Supreme Court has made clear that inmates do not have a general, freestanding right to legal materials or assistance.[41] Thus, the conclusory assertion that Plaintiff "had a hard time getting legal assistance," without more detail regarding the lack of legal assistance

---

[35] *Lewis v. Casey,* 518 U.S. at 356.
[36] *Brewer v. Wilkinson,* 3 F.3d 816, 821 (5th Cir. 1993).
[37] *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis*, 518 U.S. at 353 & n. 3.
[38] *Lewis*, 518 U.S. at 348 (emphasis added).
[39] *Harbury*, 536 U.S. at 416 (internal quotation marks omitted).
[40] R. Doc. 1, p. 10.
[41] *Lewis*, 518 U.S. at 348.

and without description of the underlying claim, as described above, is insufficient to state a claim for denial of access to the Courts. Accordingly, this claim should be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

### C. Deliberate Indifference

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must demonstrate that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[42] Whether the plaintiff has received the treatment or accommodation that he believes he should have is also not sufficient absent exceptional circumstances.[43] Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action.[44] Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.[45] *Farmer* lays out both an objective prong, and a subjective prong.[46] The objective prong requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'"[47] Second, under *Farmer's* "subjective" prong, plaintiffs must show that prison officials acted with a "sufficiently culpable state of mind."[48] The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[49]

---

[42] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985).
[43] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).
[44] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).
[45] *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).
[46] *Id.* at 837.
[47] *Id.* at 834, *quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991).
[48] *Id.*
[49] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle*, 429 U.S. at 106.

7

Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.[50]

This Court does not, at this juncture, have to determine whether "security" was deliberately indifferent to Plaintiff's serious medical needs because Plaintiff has failed to name any individual as a defendant who ignored his pleas for medical assistance. The sole Defendant named, Davis, is not named as the official who refused to allow Plaintiff to obtain medical attention. Rather, Plaintiff states that "security" would not allow him to receive medical attention. Because Plaintiff has failed to name as a defendant any individual who refused to allow him to obtain medical assistance, this claim must fail.[51]

### D. Confinement in Administrative Lockdown

Plaintiff also alleges in a conclusory fashion that he has been wrongfully held in administrative segregation.[52] Plaintiff alleges that he was issued a false write up, "which started all this madness."[53] Plaintiff alleges that the disciplinary report was dismissed but that Joseph LaMartiniere, who is not named as a Defendant, violated Plaintiff's right to due process by refusing to watch the video surveillance of the incident.[54] The law is clear that the issuance of one or more false disciplinary reports, even when the report results in punishment, is not a constitutional violation.[55] The procedures governing prison disciplinary proceedings do not implicate any

---

[50] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).
[51] Plaintiff need not know the identity of those who mistreated him. Rather, he could name "Unknown Security Officer," and amend the complaint at a later date if and when the identity is revealed. However, because Plaintiff has not named anyone, even a John Doe, his claims must fail.
[52] R. Doc. 1, pp. 8 & 10.
[53] R. Doc. 1, p. 8
[54] R. Doc. 1, p. 8.
[55] *See Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984). It is also unclear which official issued the alleged false disciplinary report, but it does not appear that Defendant was the issuer of the alleged false report.

constitutionally protected liberty interest unless the resulting punishment has subjected an inmate to an atypical and significant deprivation (evaluated in the context of prison life).[56]

Generally, a disciplinary sentence of a quarters change to segregated confinement, as occurred here, is not so atypical as to give rise to a claim of violation of procedural due process rights.[57] However, if segregated confinement imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, an inmate may have grounds for a due process claim.[58] Plaintiff has failed to describe his claim in sufficient detail for this Court to determine whether the segregated confinement to which he is subjected subjects him to an atypical and significant deprivation.[59] Further, Plaintiff has failed to name any individual as a defendant who is responsible for keeping Plaintiff in administrative segregation. Considering the lack of supporting facts provided and that Plaintiff failed to name a defendant responsible for his continued confinement in administrative segregation, Plaintiff's has failed to state a claim for due process violations arising from his confinement in administrative segregation.[60]

### E. Excessive Force

Plaintiff also makes allegations against Defendant that sound in excessive force. These claims should survive dismissal, with an exception discussed below. Force is considered excessive in violation of the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain

---

[56] *Sandin v. Conner*, 515 U.S. 472, 486 (1995).
[57] *Id.*
[58] *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014) (internal quotation marks and citations omitted).
[59] In determining whether a liberty interest in avoiding a deprivation has arisen, facts to consider include the nature of the more-restrictive confinement (severity of restrictive conditions) and its duration in relation to prison norms and to the terms of the individual's sentence (duration). *Id.*
[60] Based upon the record, (*see* R. Doc. 7), it appears as though Plaintiff is still confined in administrative segregation; thus, if Plaintiff were so inclined, he could file another action regarding his continued confinement in administrative segregation. The Court does not opine on the viability of such a claim herein.

9

or restore discipline.[61] "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[62] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."[63] Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any; the need for the application of force; the relationship between the need for force and the amount of force utilized; the threat reasonably perceived by prison officials; and any efforts made to temper the severity of a forceful response.[64]

The Supreme Court has previously found excessive force when a handcuffed prisoner was slammed into walls when the prisoner did nothing to provoke the force.[65] Here, Plaintiff alleges that while his hands were cuffed behind his back, Defendant proceeded to slam him into concrete when "there was no need for excessive force."[66] Further, after Plaintiff was on the ground, Defendant proceeded to "place his knee in [Plaintiff's] chest and press all his weight" into Plaintiff's chest.[67] Once Plaintiff was behind bars, Defendant also allegedly sprayed chemical agent in Plaintiff's eyes, again when there was no need to do so.[68] As alleged by Plaintiff, in all three instances listed above where force was used, there was no need for force, no threat justifying the use of force, and Defendant did nothing to temper the severity of a forceful response. Plaintiff supports the assertion that there was no need for force with the facts surrounding the incidents,

---

[61] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian,* 503 U.S. 1, 7 (1992).
[62] *Wilkins*, 559 U.S. at 38.
[63] *Hudson*, 503 U.S. at 10.
[64] *Id.* at 7.
[65] *Hudson*, 503 U.S. at 7.
[66] R. Doc. 1, p. 5.
[67] R. Doc. 1, p. 5.
[68] R. Doc. 1, p. 7.

including the fact that immediately after Plaintiff was slammed into the concrete, Defendant allegedly left Plaintiff uncuffed in the "wide open unprotected security lobby" because Defendant knew Plaintiff was not a threat.[69] Thus, viewing the facts in the light most favorable to Plaintiff, specifically considering the alleged lack of provocation, the fact that Plaintiff was restrained or behind bars for each incident, and because Plaintiff allegedly suffered injuries from the incidents,[70] Plaintiff has stated a claim for excessive force against Defendant.[71]

Though Plaintiff has stated a claim for excessive force, his claims against Defendant for monetary relief in Defendant's official capacity is barred and should be dismissed. 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[72] In addition, in *Hafer v. Melo*,[73] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[74] Accordingly, Plaintiff's § 1983 claims asserted against Defendant in his official capacity for monetary damages is subject to dismissal.

### F. Exercise of Supplemental Jurisdiction over Plaintiff's Potential State Law Claims Should be Declined

To the extent that Plaintiff's allegations may invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental

---

[69] R. Doc. 1, pp. 5-6.
[70] R. Doc. 1, p. 7.
[71] *See Hudson*, 503 U.S. at 7.
[72] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[73] 502 U.S. 21 (1991).
[74] *Id.* at 25.

11

jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[75]  In the instant case, any state law claims Plaintiff may have are subject to wholly different analyses than the remaining federal claim; therefore, it is further recommended that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

**IT IS RECOMMENDED** that the Court decline the exercise of supplemental jurisdiction over any potential state law claims, that Plaintiff's claims against Derrick Davis for denial of access to the courts, deliberate indifference, and procedural due process violations in connection with Plaintiff's confinement in administrative segregation, as well as Plaintiff's claims for monetary relief against Derrick Davis in his official capacity be **DISMISSED, WITH PREJUDICE**, as legally frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A.

**IT IS FURTHER RECOMMENDED** that this matter be referred to the magistrate judge for further proceedings on Plaintiff's remaining claims, *i.e.*, Plaintiff's claims for declaratory relief and for monetary damages against Derrick Davis in his individual capacity for the claims of excessive force occurring on October 21, 2018.  An Order regarding service of process of the excessive force claims against Derrick Davis will be issued separately.

Signed in Baton Rouge, Louisiana, on July 20, 2020.

*/s/ Scott D. Johnson*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[75] 28 U.S.C. § 1367.